IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**DIONE ALIQUAN TAYLOR**,

        Petitioner,

v.

**UNITED STATES OF AMERICA**,

        Respondent.

**CIVIL ACTION NO.: 3:18-CV-33**
**CRIMINAL ACTION NO.: 3:16-CR-15**
**(GROH)**

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This case arises from Dione Aliquan Taylor ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Because Petitioner's claims are without merit, the undersigned recommends that Petitioner's motion be denied and dismissed with prejudice.

### II.    FACTS & PROCEDURAL HISTORY[1]

**A. Petitioner's Conviction, Sentence, and Appeal**

On April 5, 2016, Petitioner was indicted for three counts of distribution of heroin in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and one count of felon in possession of a firearm in violation of Title 18, United States Code, Sections 922(g) and 924(a)(2). Indictment, ECF No. 1. On June 10, 2016, Petitioner pled guilty pursuant to a written plea agreement to Felon in Possession of a Firearm in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). Transcript,

---

[1] All references to document numbers refer to criminal case number 3:16-CR-15.

ECF No. 57. During the plea hearing, Petitioner acknowledged that he understood the maximum penalty to which he would be exposed to under the terms of his written plea agreement was 10 years (120 months) imprisonment, a $250,000 fine, and 3 years supervised release. Id. at 25:1-6. Further, Petitioner affirmed that the written agreement was the complete agreement between Petitioner and the government and there were no other agreements except those contained in the written plea agreement. Id. at 16:22-25 and 17:1-4. Further, Petitioner stated during the plea hearing that he fully understood and agreed with the terms of the plea agreement. Id. at 15:1-21. Petitioner signed every page of the plea agreement indicating that he understood the terms. ECF No. 35 and ECF 57, 15:1-5. During the plea hearing, Petitioner said he understood that the sentence could not be determined until after the United States Probation Office had prepared a presentence report. ECF No. 57, 15:10-21. Additionally, Petitioner agreed that the plea was not a result of any threat, coercion, or harassment and that the plea was not the result of any promises except those contained in the plea agreement. Id. at 34:10-16. Petitioner testified in court that there was no known claim for ineffective assistance of counsel at the time of his plea hearing. Id. at 29:4-25, 30:1-12.

Shortly thereafter, the Presentence Investigation Report ("PSR") was completed which established a guideline range of 100 to 125 months for his guilty plea to count two of the indictment. ECF No. 46 at 23, ¶ 106 (Filed Under Seal). However, this range was restricted by the statutory maximum set forth in Title 18, United States Code, Sections 924(a)(2) of ten (10) years (120 months). Id. Petitioner did not file any objections to the PSR. ECF No. 58 at 3:1-19. Prior to sentencing, Petitioner's counsel

filed a sentencing memorandum that requested a below-the- guideline sentence of 80 months. ECF No. 43 at 1, 5.  Petitioner was represented by Nicholas J. Compton, Assistant Federal Public Defender at the sentencing hearing on September 26, 2016. Mr. Compton clarified during the sentencing hearing that although the sentencing memorandum indicates a request for no more than 80 months, Petitioner was, in fact, requesting a sentence of no more than 50 months. After a lengthy argument by defense counsel and the presentation two witnesses (Naomi Crites and Jasmine Jones), Chief Judge Gina M. Groh sentenced Petitioner to 120 months, which was within the guideline range set forth in the PSR.

On October 11, 2016, Petitioner filed a notice of appeal.  According to the Fourth Circuit's unpublished per curiam opinion, Defense Counsel filed an <u>Anders</u> brief "certifying that there are no meritorious grounds for appeal but question[s] whether Petitioner's sentence is unreasonable in light of the 18 U.S.C. § 3553(a)(2012) sentencing objectives." ECF No. 61.  The Fourth Circuit held that after a review of the entire record, Petitioner's sentence was procedurally and substantively reasonable affirming Chief District Judge Groh's ruling. <u>Id.</u> Petitioner did not file a petition of certiorari in the United States Supreme Court. ECF 69 at 2.

### B.  Petitioner's § 2255 Motion

Petitioner asserts two grounds of ineffective assistance of counsel.  First, he claims that, "He had been told by his court-appointed counsel in the federal criminal proceedings that counsel had conferred with the prosecutor and the judge, and that if he pleaded guilty to count 2 he would get only a 50 months sentence." ECF 65-1 at 2.  Further, Petitioner asserts "that upon formal questions at arraignment, he should deny the existence of any

promises in order that the court would accept the guilty plea." Id. at 3.

For the second ground, Petitioner asserts that counsel was ineffective "during the pretrial and sentencing process when trial counsel failed to attack the validity of his indictment during the pretrial proceeding." Id. at 4. Although it is difficult to understand Petitioner's reasoning, it appears he is unsure whether the government followed the proper procedure during his grand jury indictment. Petitioner appears to dispute whether the required number of grand jurors were present for the indictment.[2]

The Government responded to each of these grounds stating that Petitioner has not demonstrated in either ground that defense counsel's representation was ineffective under Strickland v. Washington, 466 U.S. 668 (1984).

### III.   DISCUSSION

**A. Legal Standard**

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" Beyle v. United States, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving

---

[2] It appears that Petitioner filed a motion [ECF No. 79] to unseal grand jury proceedings. Chief District Judge Groh denied that motion because Petitioner did not specify the particular grand jury materials he was seeking. ECF No. 83.

4

one of those grounds by a preponderance of the evidence." Id. (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." Id. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." Id. (citing Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970)).

### B.  Petitioner's Ineffective Assistance of Counsel Claims are Without Merit

It is well established that the Sixth Amendment guarantees defendants the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). To succeed on an ineffective assistance of counsel claim, the "petitioner must show, by a preponderance of the evidence, that (1) 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" Beyle, 269 F. Supp. 3d at 726 (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). "The Petitioner must 'satisfy both prongs, and a failure of proof on either prong ends the matter.'" Id. (quoting United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004)). "Unsubstantiated and largely conclusory statements are insufficient to carry a petitioner's burden as to the two prongs of this test." Id. (cleaned up).

A petitioner satisfies the first prong when he shows that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 687–88. However, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to

conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.

To satisfy the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  In doing so, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, not merely that the error created a possibility of prejudice." Beyle, 269 F. Supp. 3d at 727 (internal citations and quotations omitted).

### 1. Failure to keep alleged promise of 50 months incarceration at sentencing.

Petitioner argues that his court-appointed counsel was ineffective for failing to keep his alleged promise of a 50-month sentence for Petitioner.  ECF No. 65-1 at 2.  Petitioner claims that he was told by his counsel that "…counsel had conferred with the prosecutor and the judge, and that if he pleaded guilty to count 2 he would get only a 50 months sentence."  ECF 65-1 at 2.  He further asserts that counsel told him "…that upon formal questions at arraignment[3], he should deny the existence of any promises in order that the court would accept the guilty plea." [4]  ECF No. 65-1 at 3.

---

[3] Although Petitioner uses the word "arraignment", the undersigned believes that he meant to use the word "plea hearing".  At the arraignment in this case, Petitioner pled not guilty.

[4] It is unclear when Petitioner contends the alleged promise of a 50-month sentence was made. For example, Petitioner asserts in his Reply [ECF No. 80] that "…counsel made promises or assurances concerning sentencing **after the plea was accepted** …." Id. at 3. Discrepancies like these challenge Petitioner's credibility.

Petitioner's allegation of a promise of a 50-month sentence prior to his plea hearing is not supported by the evidence in the record.  In fact, the record from the plea hearing on June 10, 2016, shows that Petitioner understood as follows:

> THE COURT:  Do you understand that the U.S. Sentencing Guidelines play an important role in determining a sentence in your case?
> THE DEFENDANT: Yes.
> THE COURT:  Have you and Mr. Crockett[5] discussed the application of the U.S. Sentencing Guidelines to your specific case?
> THE DEFENDANT:  Yes.
> THE COURT:  Do you understand that the Court will not be able to determine the applicable advisory Guideline sentence for your case until after the presentence investigation report has been completed, and you and the government have had an opportunity to review it and challenge the facts determined by the probation officer and the application of the Guidelines recommended by the probation officer?
> THE DEFENDANT:  Yes.
> THE COURT:  Do you understand that the sentence imposed upon you by the Court may be different from any estimate Mr. Crockett may have given you, or what you thought it would be?
> THE DEFENDANT:  Yes.

ECF No. 57 at 26:14-25, 27:1-10.

> …
> THE COURT:  Do you also understand that even if you do not like the sentence imposed upon you by the Court, you will still be bound by your plea and will have no right to withdraw it?
> THE DEFENDANT:  Yes.

Id. at 28:2-6.

---

[5]  Brian C. Crockett, Assistant Federal Public Defender, represented Petitioner at his plea hearing.  Nicholas J. Compton, Assistant Federal Public Defender, represented Petitioner at his sentencing hearing. Petitioner has not indicated throughout any of his filings that he had separate counsel for these hearings, nor has he indicated which of these attorneys allegedly promised him a 50-month sentence.

During the plea hearing, Petitioner acknowledged that he understood the maximum penalty to which he would be exposed to under the terms of his written plea agreement was 10 years (120 months) imprisonment. Id. at 25:1-6. Further, Petitioner affirmed that the written agreement was the complete agreement between Petitioner and the government and there were no other agreements except those contained in the written plea agreement. Id. at 16:22-25 and 17:1-4.

> THE COURT: Sir, does the written plea agreement represent the complete agreement between you and the government?
> THE DEFENDANT: Yes.
> THE COURT: Is there anything that you and the government have agreed to that is not contained in the written plea agreement before you?
> THE DEFENDANT: No.

Id., at 17:1-4.

> THE COURT: Sir, has anyone promised you or told you something that is different from what I have told you today to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Is the plea the result of any promises, other than the promises specifically contained in the written plea agreement?
> THE DEFENDANT: No.

Id., at 34:21-25, 35:1-3.

> THE COURT: Has anyone promised or predicted the exact sentence which will be imposed upon you in this matter?
> THE DEFENDANT: No.
> THE COURT: Do you understand that at this time no one could know the exact sentence which will be imposed in this case?

8

Id., at 35:7-14. Based on the above testimony taken under oath, there is no evidence that prior to and during the plea hearing, there was any alleged promise of a 50-month sentence.

The Petitioner asserts in his Reply [ECF No. 92] that the maximum he would have received if he had gone to trial was a 120 month incarceration; therefore, logically, it would not make sense for him to accept a plea that would give him the maximum sentence he would have received if he had gone to trial. Id. at 3. Petitioner fails to note in his reply that as part of his written plea agreement, the government agreed to dismiss three drug counts against him which could have resulted in three additional sentences adding to his 120-month sentence.

Petitioner further asserts in his Reply [ECF No. 92] that there is evidence during the sentencing hearing of his alleged promise of a 50-month sentence. Id. at 3. The sentencing hearing record shows that Petitioner did not object to the advisory guideline range in the PSR. ECF No. 58 at 6:7-10. However, Petitioner points to the following comment from his counsel during the sentencing as evidence of the alleged promise of a 50-month sentence:

> Your Honor, Mr. Taylor asks that the Court exercise its discretion and impose a sentence below the low end of the Guideline range. I want to point out to the Court that there was a small communication error between Mr. Taylor and myself. The sentencing memorandum indicates a request for sentence of no more than 80 months. Mr. Taylor requests a sentence of no more than 50--50 months--50. And I apologize for that error in the sentencing memo, Your Honor. A sentence of no more than 50 months. And we rely on the bases we have listed in the sentencing memorandum in support of that.

ECF No. 58 at 9:9-20. The government clear opposed that request, stating as follows:

9

> …I would note that typically, as the Court knows, you would see a low end Guideline recommendation in our plea agreements. And that's usually found in Paragraph 7. In this case that's not the case. We're not recommending the low end. I believe that the calculation of the Guidelines, 100 to 120 months, is appropriate, and I believe a top end sentence of 120 months is appropriate for Mr. Taylor in this case given his significant criminal history, his ties to firearms and drugs, and his conduct in the instant offense, Your Honor. Thank you.

ECF No. 58 at 20:3-13.

Petitioner further asserts in his Memorandum [ECF 65-1] that the alleged promise of a 50-month sentence was told to his grandmother, Naomi Crites and his girlfriend, Jasmine Jones. Id.at 2-3.  During the sentencing hearing, Petitioner's grandmother, Naomi Crites, and his girlfriend, Jasmine Jones, testified on Petitioner's behalf.  Neither witness indicated during their testimony that there was a promise that Petitioner would only serve 50 months.  See Sentencing Transcript ECF No. 58.

Petitioner offers no proof of this alleged promise other than his own claims. The undersigned finds that Defense counsel was not ineffective with regard to this sentencing issue.  Defense counsel requested no more than 50 months incarceration as the Petitioner had instructed him to do. ECF No. 57 at 9:9-20.  Petitioner testified during the sentencing as well as his grandmother and ex-girlfriend and none of them mentioned a promised 50-month sentence.  Finally, the alleged promise of a 50-month sentence was not presented on appeal.

Accordingly, Petitioner's request for a hearing and his reliance upon Edwards v. Garrison, 529 F.2d 1374 (4th Cir. 1975) is misplaced. In Edwards, a defendant was promised, in an undisclosed plea agreement, that if he pled guilty, he would receive a

twenty-year prison term. Id. at 1375. He was later sentenced to thirty years. Id. The court held that an evidentiary hearing must be held to determine if an undisclosed plea agreement existed. Id. at 1377. Here, there is no evidence of an undisclosed plea agreement.  As set forth above in the excerpts from the transcript of the plea hearing, Petitioner testified that he fully understood and agreed with the terms of the plea agreement and there were no other agreements except those contained in the written plea agreement.  ECF No. 57 at 34:21-25, 35:1-3. Additionally, Petitioner testified that no one promised or predicted the exact sentence which would be imposed upon him and that he understood no one could predict that until after the presentence investigation report was filed. Id., at 35:7-14. Therefore, Petitioner is not entitled to an evidentiary hearing pursuant to Edwards.

Additionally, Petitioner has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." Strickland, 466 U.S. at 689. Although Petitioner asserts that his counsel promised him only 50 months incarceration, there is nothing in the above record to indicate there was a promise by a preponderance of the evidence. The record does indicate that Counsel diligently argued and presented witnesses at the sentencing requesting a 50-month sentence which was below the guideline range.  Therefore, counsel's performance falls within the wide range of reasonable professional assistance.

Further, Petitioner fails to satisfy the second Strickland prong.  To satisfy the second prong, in the context of guilty pleas, a petitioner "must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The Petitioner does not

assert that he would have gone to trial instead of pleading guilty as a result of not receiving the alleged promise of 50 months. Accordingly, Petitioner's claim cannot satisfy the two-prong Strickland standard and is without merit.

### 2. Failure to Attack Validity of the Indictment

Petitioner's second ground for ineffective assistance of counsel is that he failed to attack the validity of the indictment. The Court finds Petitioner's argument is without merit. Here, Petitioner alleges the indictment is not in compliance with Fed. R. Crim. P., Rule 6(f) which states as follows:

> (f) Indictment and Return. A grand jury may indict only if at least 12 jurors concur. The grand jury--or its foreperson or deputy foreperson--must return the indictment to a magistrate judge in open court. To avoid unnecessary cost or delay, the magistrate judge may take the return by video teleconference from the court where the grand jury sits. If a complaint or information is pending against the defendant and 12 jurors do not concur in the indictment, the foreperson must promptly and in writing report the lack of concurrence to the magistrate judge.

Fed. R. Crim. P., Rule 6 (f). Petitioner states in his Reply [ECF No. 92] that he does not "…have any further evidence for the challenge of this issue." Id. at 5. Petitioner asks the court to review and if there are any issues with the indictment to remand accordingly. Id.

As with Petitioner's first allegation of ineffective assistance of counsel, Petitioner again fails to satisfy either prong of the Strickland. Id., 466 U.S. at 687. First, Petitioner has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." Id., 466 U.S. at 689. Petitioner was unable to find any defect with the indictment. Petitioner testified at the plea hearing that there were no defects known to him at the taking of his plea. Petitioner failed to file any

allegations about the validity of the indictment on appeal. Upon review, the court takes judicial notice under Fed. R. Evid., Rule 201, that the indictment in this case was returned as a true bill in compliance with Fed. R. Crim. P., Rule 6 (f) in Wheeling, West Virginia before Magistrate Judge James E. Seibert. Clearly, Petitioner's counsel was not constitutionally ineffective for failing to attack a valid indictment. Therefore, counsel's performance falls within the wide range of reasonable professional assistance.

Likewise, the second prong of Strickland cannot be met. There is no prejudice if the indictment was valid and there was no error. In short, Petitioner's ineffective-assistance-of-counsel claim lacks merit because he cannot satisfy either Strickland prong.

### IV.   RECOMMENDATION

For the foregoing reasons, I find that Petitioner's claims of error are without merit. Accordingly, I **RECOMMEND** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action No. 3:18-CV-33, ECF No. 1; Criminal Action No. 3:16-CR-15, ECF No. 65] be **DENIED** and **DISMISSED WITH PREJUDICE**.

The Petitioner shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless

accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 14th day of January 2020.

_Robert W. Trumble_
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE